IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,      *

    Plaintiff,      *

      v.      *      CIVIL NO.:   WDQ-09-2475

                *

$23,530 U.S. CURRENCY,      *

    Defendant.      *

*      *      *      *      *      *      *      *      *      *      *      *      *

MEMORANDUM OPINION

The Government seeks to recover $23,530 traceable to the
sale or exchange of controlled substances, in violation of 21
U.S.C. § 841, by Wade Coats.  For the following reasons, the
Government's motion for summary judgment will be denied.

I. Background[1]

Coats and others were indicted for conspiracy to distribute
and possess with intent to distribute 1000 kilograms or more of
marijuana and five kilograms or more of cocaine.  No. WDQ-09-
0333, ECF No. 66.  Coats was also charged with possessing a
firearm in furtherance of a drug trafficking crime.  *Id.*  The
following facts were elicited before and during trial.

---

[1] For a more detailed factual background, see *United States v.
Cavazos*, 2011 WL 4596050, No. WDQ-09-0333 (D. Md. Sept. 30,
2011).  In reviewing a motion for summary judgment, the
nonmovant's evidence "is to be believed, and all justifiable
inferences are to be drawn in his favor."  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On April 27, 2009, law enforcement officers saw Coats and co-defendant Ronald Brown (a/k/a "Truck") engage in an apparent drug transaction in Baltimore City, Maryland. *See* No. WDQ-09-0333, Oct. 12, 2010 Mot. Hr'g Tr. at 8:3-20, 12:5-18, 13:6-17. At about 12:30 a.m. on April 28, Coats's white Lincoln was followed to the 600 Block of North Duncan Street, where he parked and entered a cell phone store. *Id.* at 17:15-19, 37:17-19.[2] Sometime later, Coats left the store, *id.* at 22:6-12, and the officers approached him, *id.* at 22:22-24. After a brief exchange, the officers called for a K-9 unit to inspect Coats's car. *Id.* at 24:11-15. The dog alerted to the presence of narcotics, and the car was searched. *Id.* at 25:2-4, 20-22. During the search, after observing suspicious behavior by Coats, the officers patted him down for a weapon and recovered a 40-caliber semi-automatic handgun. *Id.* at 27-28.

Coats was arrested for the handgun violation. No. WDQ-09-0333, Oct. 12, 2010 Mot. Hr'g Tr. at 28:25-29:2; No. WDQ-09-0333, Feb. 1, 2011 Trial Tr. at 105:13-15. During a search incident to Coats's arrest, police seized $7010 in cash, about $5000 of which was wrapped in his sock. No. WDQ-09-0333, Oct. 12, 2010 Mot. Hr'g Tr. at 162:3-7. Later that night or in the

---

[2] The cell phone store ("4C's Communications, Inc."), at 429 North Duncan Street, Baltimore, Maryland, served as Coats's business and residence. No. WDQ-09-0333, Feb. 1, 2011 Trial Tr. at 201:11-18; ECF No. 21-1 ¶ 3 (Coats Decl.).

early morning, a search warrant was prepared for the cell phone
store. *Id.* at 175:10-12. The warrant was executed at about
9:00 a.m. No. WDQ-09-0333, Feb. 1, 2011 Trial Tr. at 110:5-11.
Officers found an additional $16,520 in cash in a black bag in
the second-floor rear bedroom. *Id.* at 204:1-3, 11-14. The
total amount recovered from Coats's person and property was
$23,530. According to Coats, he legally acquired the money from
customers of his cell phone business. ECF No. 21-1 ¶ 4 (Coats
Decl.).

On February 7, 2011, Coats was convicted of conspiracy to
distribute and possess with intent to distribute cocaine, and
possessing a firearm in furtherance of a drug trafficking crime.
No. WDQ-09-0333, ECF No. 143.

On September 18, 2009, the Government filed a verified
complaint for forfeiture against $23,530 in U.S. currency (the
"defendant currency"), alleging that the currency seized from
Coats's person and store on April 28, 2009 is subject to
forfeiture under the Controlled Substances Act (the "CSA"), 21
U.S.C. § 881(a)(6). ECF No. 1. On September 24, 2009, the
Government moved to stay discovery pending conclusion of the
parallel criminal case. ECF No. 5. On October 19, 2009, this
Court granted the motion. ECF No. 7. On August 28, 2012, the
Government moved to lift the stay, ECF No. 8, and for summary
judgment, ECF No. 9. Also on August 28, this Court granted the

3

motion to reopen and ordered the stay lifted. *See* ECF No. 10.
On September 28, 2012, Coats filed a claim to the currency. ECF
No. 15.  On October 20, 2012, Coats answered the complaint. ECF
No. 16.  On December 19, 2012, Coats timely opposed the
Government's motion for summary judgment.  ECF No. 21; *see* ECF
No. 20.  The Government has not replied.  *See* docket.

II. Analysis

A. Legal Standard

Under Fed. R. Civ. P. 56(a), summary judgment "shall [be]
grant[ed] . . . if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."[3]  In considering the motion, "the
judge's function is not . . . to weigh the evidence and
determine the truth of the matter but to determine whether there
is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  A
dispute about a material fact is genuine "if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most
favorable to . . . the nonmovant, and draw all reasonable
inferences in [his] favor," *Dennis v. Columbia Colleton Med.*

---

[3] Rule 56(a), which "carries forward the summary-judgment
standard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,' "and restored the word" 'shall'
. . . to express the direction to grant summary judgment."  Fed.
R. Civ. P. 56 advisory committee's note.

*Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

B. The Merits

The Government argues that it is entitled to summary judgment on the issue of forfeitability because "the jury found beyond a reasonable doubt that [Coats] distributed cocaine and was engaged in a drug trafficking crime on the evening he was arrested, and that he was involved for many years in a massive conspiracy to distribute cocaine, heroin and marijuana." ECF No. 9-1 at 4. Coats counters that "[s]imple possession of currency during the commission of a drug trafficking crime does not automatically convert that currency into proceeds of a drug trafficking offense or funds used or intended to be used to facilitate such a crime." ECF No. 21 at 3.

Currency traceable to the exchange of controlled substances is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 881(a)(6). To prove that an asset is subject to forfeiture, the Government must establish, by a preponderance of the evidence, that there was a substantial connection between the property to

be forfeited and the offense.[4]  In determining whether currency

is substantially connected to a CSA violation, the court may

consider: (1) "the amount and denomination of the property"; (2)

how the currency was packaged; (3) the behavior of the person in

possession of the currency; (4) whether a trained narcotics dog

"alerted to the currency or the location in which the currency

was discovered"; and (5) whether the claimant has a lawful

source of income. *United States v. $14,800.00 in U.S. Currency*,

No. ELH-11-cv-3165, 2012 WL 4521371, at *7 (D. Md. Sept. 28,

2012) (collecting cases).  In determining whether the Government

has met its burden, courts should consider "the totality of the

evidence as a whole and in the appropriate context." *See United

States v. Currency, U.S., $147, 900.00*, 450 F. App'x 261, 264

(4th Cir. 2011) (per curiam) (internal quotation marks omitted).

At trial, the Government offered sufficient evidence of

Coats's involvement in a cocaine conspiracy for the jury to find

him guilty of that charge, beyond a reasonable doubt.  No. WDQ-

09-0333, ECF No. 143.  At issue is whether the Government has

shown, by a preponderance of the evidence, that the defendant

currency and illegal drug activity were substantially connected.

---

[4] 18 U.S.C. § 983(c)(1), (3); *see also United States v. Borromeo*,
995 F.2d 23, 26 (4th Cir. 1993) ("To fail to require the
government to demonstrate a substantial connection between the
criminal activity and the arrested assets could result in all
assets belonging to one who stands convicted of violating our
nation's drug laws being, *ipso facto,* subject to forfeiture
regardless of their origin.  Such is not the law.").

Viewed in isolation, some of the above factors suggest that they were.

First, the amount of currency seized from Coats--$23,530-- is large. *Cf. Currency, U.S., $147,900.00*, 450 F. App'x at 264 (a defendant's possession of "large sums of cash" at the same time as his engagement in drug activity is "strong evidence" that the cash is connected with drug activity (internal quotation marks omitted)). Second, at least $5000 of that amount was discovered in Coats's sock, and over $16,000 was found in a bag on his bedroom floor. No. WDQ-09-0333, Oct. 12, 2010 Mot. Hr'g Tr. at 162:3-7; No. WDQ-09-0333, Feb. 1, 2011 Trial Tr. at 204:1-3, 11-14. Neither is a typical location for safekeeping legally acquired money. *See United States v. $50,720.00 in U.S. Currency*, 589 F. Supp. 2d 582, 583–84 (E.D.N.C. 2008) (substantial connection found where currency was hidden in false bottom of suitcase). Finally, Coats's nervousness at the time of his arrest is also minimally relevant. No. WDQ-09-0333, Oct. 12, 2010 Mot. Hr'g Tr. at 114:1-5.[5]

Nevertheless, the Government cannot prevail on its motion for summary judgment if the claimant offers a "reasonable and

---

[5] *United States v. Ten Thousand Seven Hundred Dollars & No Cents in U.S. Currency*, 258 F.3d 215, 226 (3d Cir. 2001) (noting that "many, if not most, individuals can become nervous or agitated when detained by police officers").

legitimate explanation" for his possession of the currency and
the explanation is verified by "facts and circumstances, which,
if believed, would enable a rational jury to conclude by a
preponderance of the evidence that [forfeiture is not
warranted]."[6]  Here, Coats has submitted a declaration that the
defendant currency was lawfully acquired in the course of
operating his legitimate telephone business, which largely ran
on a cash basis.  ECF No. 21-1 ¶¶ 3-5.  In support of this
assertion, Coats also submitted a "representative sample" of
deposit slips apparently showing past substantial cash deposits
into the business's account.  ECF No. 21-1 at 3-4.[7]  In light of
this evidence, a reasonable jury could find that the defendant
currency and illegal drug activity were unrelated.  *Cf.
Currency, U.S., $147,900.00*, 450 F. App'x at 264 (finding
connection to drug activity when defendant had "*no* reported
income *or work history* that could explain the large amount of
currency in his possession" (emphases added)).[8]

---

[6] *See United States v. Leak*, 123 F.3d 787, 793 (4th Cir. 1997)
(internal quotation marks omitted).

[7] The Government has not disputed the authenticity of these
exhibits.

[8] *See also United States v. Two Parcels of Real Prop. Located in
Russell Cnty.*, 92 F.3d 1123, 1129 (11th Cir. 1996) ("The mere
*allegation* of a *highly unlikely* source of income *without some
support to give the allegation credibility* cannot constitute an
issue of material fact defeating summary judgment for
forfeiture." (emphases added)).

Because the record contains conflicting explanations about the source or use of the $23,530, the Government is not entitled to judgment as a matter of law.

III. Conclusion

For the reasons stated above, the Government's motion for summary judgment will be denied.

2/21/13
_____
Date

_____
William D. Quarles, Jr.
United States District Judge